1  Lynn Hubbard, III, SBN 69773
2  Scottlynn J Hubbard, IV, SBN 212970
3  **Law Offices of Lynn Hubbard**
   12 Williamsburg Lane
4  Chico, CA 95926
5  (530) 895-3252

6  Attorneys for Plaintiff, A.J. OLIVER

9  UNITED STATES DISTRICT COURT,
10 SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.J. OLIVER,<br><br>         Plaintiff,<br><br>    v.<br><br>LONGS DRUG STORES CALIFORNIA, INC. dba LONGS DRUGS STORE #55; LONGS DRUG STORE, INC.,<br><br>         Defendants. | Case No. 07cv2302 IEG (BLM)<br><br>**PLAINTIFF'S OPPOSITION to DEFENDANTS' MOTION to DISMISS PLAINTIFF'S STATE LAW CLAIMS PURSUANT TO 28 U.S.C. 1367(c)**<br><br>Date:  February 19, 2008<br>Time:  10:30 a.m.<br>Room:  Courtroom 1<br><br>**Honorable Irma E. Gonzalez** |

### I. INTRODUCTION

Defendant Longs Drug Stores California, Inc. (hereinafter "Longs Drugs") has filed a motion to dismiss plaintiff A.J. Oliver's state claims. To support its argument, defendant argues that the state law claims raise novel and complex issues of California law. Furthermore, Longs Drugs relies on a recent decision from a state appellate court, in the case of

*Gunther v. Lin,* for the bulk of its argument.

Plaintiff Oliver is well aware that this Court is familiar both with the legal issues at stake as well as the arguments presented, as this Court has previously ruled on a nearly identical motion to dismiss in November of 2007, in the case of *Oliver v. GMRI, Inc. dba Red Lobster #0521*, Case No. 07cv1719 IEG (WMc), Docket Item # 9, Order Granting Defendant GMRI'S Motion to Decline Supplemental Jurisdiction and to Dismiss State Law Claims. Indeed, defendant cites to that case in its briefing papers.

Having, therefore, previously "put his best foot forward" in the form of argument in that case, Oliver is of course cognizant that he is unlikely to persuade this Court to a different ruling in the instant matter. However, for the purposes of putting forth said arguments on the record in this case – with an eye towards appeal – Oliver requests the Court's indulgence as he repeats those arguments, which the Court will recognize from the case of *Oliver v. GMRI, Inc*.

Additionally, Oliver also presents a new argument, which is that this Court can choose to decline supplemental jurisdiction over the Unruh Act claim *only*, as that is the only state claim subject to defendant's arguments. The other state claims – including those based on the Disabled Persons Act and Health and Safety Codes – do not come within the sphere of Longs Drugs' arguments, and therefore present no novel or complex issues.

## II.  DISCUSSION

### A. This Court, if it Opts to Decline Jurisdiction, Should Only Decline Jurisdiction Over the Unruh Act Claim

The basis of Longs Drugs' argument is that due to a conflict between the federal and state courts over whether a showing of intent is required to obtain statutory damages under the pled California Unruh Act (a state appellate court has ruled that such showing is required, while a Ninth Circuit

1  case had previously held the opposite), this Court must decline jurisdiction
2  over that claim "as a matter of comity and to promote justice between the
3  parties." *See Motion to Decline Supplemental Jurisdiction and to Dismiss*
4  *Plaintiff's State Law Claims* (hereinafter "Defendant's Motion"), p. 4.
5       As already stated, Oliver is well aware as to how this Court has ruled
6  previously on this issue, and therefore presents his arguments, *infra,* for the
7  record only.
8       However, Oliver now points out that Longs Drugs' argument applies
9  <u>only to the Unruh Act claim</u> – it has no force with respect to Oliver's state
10 law claims.  Nor does Longs Drugs argue otherwise in its motion.  Longs
11 Drugs' position is clear: due to the tension between the state and federal
12 courts regarding intent with the <u>Unruh Act</u>, supplemental jurisdiction should
13 be declined.  Fair enough.  But, <u>there is no such tension or conflict regarding</u>
14 <u>the Disabled Persons Act, or any of Oliver's other state claims</u>.  Therefore,
15 this Court has no reason to decline supplemental jurisdiction over Oliver's
16 other state law claims as Longs Drugs presents no "exceptional
17 circumstances" or "other compelling reasons" as a basis to decline such
18 jurisdiction over, for example, the Disabled Persons Act claim.
19      And of course, in light of the absence of such argument, this Court has
20 the usual reasons to <u>retain</u> jurisdiction over these other state claims. "District
21 courts **shall** have supplemental jurisdiction over all other claims that are so
22 related to claims in the action within such original jurisdiction that they form
23 part of the same case or controversy." 28 U.S.C. § 1367. "A state law claim
24 is part of the same case or controversy when it shares a 'common nucleus of
25 operative fact' with the federal claims and the state and federal claims would
26 normally be tried together." *Bahrampour v. Lampert,* 356 F.3d 969, 978 (9th
27 Cir.2004).  A court may decline to exercise jurisdiction over a supplemental
28 state law claim in "exceptional circumstances," where there are "compelling

1 reasons" for doing so. 28 U.S.C. § 1367(c).  Otherwise, a court **must**
2 exercise supplemental jurisdiction under section 1367.
3      As Oliver's state claims <u>unquestionably</u> arise out of the same common
4 nucleus of operative facts that make up the ADA claim – for example, the
5 Disabled Persons Act and the ADA generally protect individuals with
6 disabilities from discrimination by public accommodations because of their
7 disabilities, and burdens of proof and standards of liability will be the exact
8 same – Oliver argues that this Court **must** retain jurisdiction over his state
9 law claims, save for the Unruh Act claim.  Longs Drugs presents no
10 argument pertaining to these other claims as a basis to rule otherwise.
11 **B.**     <u>**This Court Does Not Face a Hobson's Choice as Oliver Has Pled**</u>
12          <u>**Intent in His Complaint and Has a Right to Prove Up Such Intent**</u>
13      Longs Drugs argues that the recent case of *Gunther v. Lin*, 144
14 Cal.App.4th 223 (4th Dist. 2006), has changed the landscape of Unruh Act
15 claims. Longs Drugs argues that since *Gunther* requires intent in order to
16 obtain statutory damages under the Unruh Act, and as such holding directly
17 conflicts with the Ninth Circuit's opposition holding in *Lentini v. Calif.*
18 *Cntr. For the Arts, Escondido*, 370 F.3d 837 (9th Cir. 2004), the "tension"
19 between *Gunther* and *Lentini* requires this Court to decline supplemental
20 jurisdiction over Oliver's state claims. *See* Defendant's Motion pp. 4-5.
21      The gist of Longs Drugs' argument seems to be that this Court has no
22 choice but to dismiss the state claims as there is a conflict between the Ninth
23 Circuit and a state appellate court.  However, this conflict centers around the
24 issue of *intent*, and on this topic (quite apart from the misguided decision in
25 *Gunther*, as discussed *infra*) this Court need not make any decision
26 regarding the state claims at this early stage of the litigation.
27      This is so because Oliver <u>has actually pled intent in his Complaint</u>
28 (*see* Complaint, Docket Item #1, ¶ 14), and basic notions of equity mean that

1  Oliver deserves a chance to prove that Longs Drugs intended to discriminate
2  against disabled persons.  It is simply too early to dismiss the state claims
3  when Oliver has not even had a chance to show this Court that intent is
4  present – regardless of whether it is required or not.  If this Court agrees that
5  *Gunther* requires intent, then Oliver has pled it, and has the right to prove it
6  up.  If this Court disagrees with *Gunther* and finds that it is bound by
7  *Lentini*, absolutely no harm is done by Oliver pursing a showing of intent to
8  discriminate by Longs Drugs.

9  Either way, this Court need not dismiss Oliver's state claims.

**C.  *Gunther* Misinterpreted the Current Law, as Well as the Statutes at Issue, and This Court is Not Bound by a State Appellate Court Decision**

Apart from the preceding argument – that this Court need not make an either-or "Hobson's Choice" at this point in the litigation – Longs Drugs relies on a case that is misguided at best, and completely off the rails at worst.

Recently, in the Eastern District, Senior District Court Judge Lawrence Karlton offered a thorough and succinct analysis of the *Gunther* case, and whether it should be interpreted to mean that Unruh Act requires intent, even when an ADA violation has been proven.  This analysis, which takes apart *Gunther* bit by bit, is eminently applicable here, and is a strong and reasoned counterpoint to the recent decision in the *Cross* case cited by Longs Drugs.

**1.  *Gunther is Not Controlling and it Directly Contradicts Prior Ninth Circuit Law***

As the California Supreme Court recently declined to hear the appeal

of *Gunther*, the decision of the California appellate court in *Gunther* is <u>not</u> <u>controlling on a federal court</u>. *See Wilson v. Haria and Gogri Corp.*, 479 F.Supp.2d 1127, 1136 (E.D.Cal.2007). Rather, "a federal court sitting in diversity must use its own best judgment to predict how the [California Supreme] court would decide the issue." *Id.* at 1135, *citing Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980).

Judge Karlton properly noted that *Gunther* directly contradicts the Ninth Circuit case of *Lentini v. Calif. Cntr. For the Arts*, 270 F.3d 837, 847 (9th Cir. 2004), which held that because a disabled plaintiff need not prove discriminatory intent under the ADA, plaintiffs also need not prove discriminatory intent under the Unruh Act, since the California legislature amended the Act to incorporate the ADA standards of liability.[1]

Judge Karlton then framed the issue as follows: Whether, therefore, a federal court is bound by *Lentini*, or is obligated to reconsider *Lentini* in light of *Gunther*? As Judge Karlton then observed, answering this question was not necessary, as a statutory and legislative history analysis of the Unruh Act convincingly shows that *Gunther* is not the law of the state, and federal courts are free to disregard intermediate state court decisions where there is "convincing evidence" that the state's highest court would decide differently. *Id.* at 1136, *citing In re Watts*, 298 F.3d. 1077, 1083 (9th Cir. 2002).

Oliver will now discuss this "convincing evidence."

**2.    *Legislative History***

As Judge Karlton noted in *Wilson*, *Gunther's* [legal] reasoning is "flawed from the outset," because the linchpin of the *Gunther* court analysis

---

[1]    Furthermore, this Court cannot presume that merely because California's highest court declined to hear the *Gunther* appeal, *Gunther* is the law of the land. A denial of review may occur for many reasons: for example, a lack of appellate split on the issue at the present time. Such denial therefore cannot be taken as California's Supreme Court's approval of *Gunther*. *See Digenova v. State Bd. Of Educ.* 57 Cal.2d 167, 178 (1962).

1  is its assertion that the Unruh Act is comprised <u>solely</u> of Calif. Civil Code
2  section 51. *See Wilson,* at 1137, *citing Gunther v. Lin*, 50 Cal.Rptr.3d 317,
3  320 (Cal.App. 4 Dist., 2006).  However, asserting that the Unruh Act
4  consists only of section 51 would mean that the enforcement section of the
5  Unruh Act – Calif. Civil Code section 52 – is *not* part of the Unruh Act.
6  This inconsistency is not explained – or reasonably dealt with – by the
7  *Gunther* court.  Indeed, as Judge Karlton noted in *Wilson*, even the case that
8  *Gunther* so heavily relies upon, *Harris v. Capital Growth Investors XIV*,
9  (1991) 52 Cal.3d 1142, acknowledges that the Unruh Act encompasses
10  **both** sections 51 *and* 52. *See Wilson,* at 1137, *citing Harris,* 52 Cal.3d at
11  1172 (where the *Harris* court stated that section 52 is "the language of the
12  Act").
13          Therefore, when the California legislature in 1992 amended the
14  Unruh Act to incorporate the ADA at section 51(f), there can be no doubt
15  that the legislature also intended that victims of ADA discrimination would
16  be entitled to the remedies provided by the enforcement section of section
17  52 – that is, the Legislature intended to amend the *entire Act*.
18          Simply put, sections 51 and 52 cannot be divorced – they both
19  comprise the Unruh Act.  Yet *Gunther's* analysis attempts to do just that.
20  Under *Gunther*, an ADA violation is a violation of the Unruh Act, but
21  section 52 does not apply unless intent is proven.  Again, as the *Wilson*
22  court succinctly and eloquently explained, this is flawed reasoning.  If
23  section 51 was amended by the Legislature to include the standards of
24  liability of the ADA – which clearly does not require discriminatory intent
25  – then section 52 was obviously part of this amendment process.  Therefore
26  there is no intent required when an ADA violation is shown in order to
27  trigger section 52's enforcement provision.
28          Simply put, if *Gunther's* analysis is correct – section 51 can be

amended without any effect on section 52 – then the California's Legislature's amending of the Unruh Act to include violations of the ADA **is rendered completely meaningless**.

Indeed, a logical conclusion of *Gunther's* analysis is a *de facto* **repeal** of the Legislature's action; that is, a repeal of the Legislature's amending of the Unruh Act. It is well-established that such repeal or revocation of legislative acts through judicial decision is frowned upon – there is a "strong presumption against implied appeal." *Western Oil & Gas Assn. V. Monterey Bay Unified Air Pollution Control Dist.*, (1989) 49 Cal.3d 408, 419. *Gunther* does exactly that – it essentially repeals the Legislature's action of amending the Unruh Act to incorporate violations of the ADA.

This became even clearer when Judge Karlton extensively reviewed the history of the amendment in *Wilson* – <u>what, exactly, did the California Legislature intend?</u> This is essential, because California's Supreme Court has explained that analysis of state statutes begins with "the fundamental premise that the objective of statutory interpretation is to *ascertain and effectuate legislative intent*." *Kimmel v. Goland*, 51 Cal.3d 202, 208 (1990) (emphasis added).

As usual, Judge Karlton's finding regarding the California Legislature's intent is clear and to the point:

> The legislative history of Section 51(f) reveals an intent to include **unintentional** disability discrimination within the scope of the Unruh Act. The Assembly Committee on Judiciary report on AB 1077 (as amended January 2, 1992, p.2) stated that the bill would: 'Make a violation of the ADA a violation of the Unruh Act. Thereby providing persons injured by a violation of the ADA with the remedies provided by the Unruh Act (e.g., right of private action for

damages).'

*Wilson*, at 1137-38 (emphasis added). Judge Karlton also noted that the California Senate Committee on Judiciary evinced the same intent:

> [T]his bill would make a violation of the ADA a violation of the Unruh Act. Thereby providing persons injured by a violation of the ADA with the remedies provided by the Unruh Act (e.g., right of private action for damages, including punitive damages).

*Id.*, n.14. In neither of these statements do either the Assembly or Senate Committee state – or even imply – that somehow the standards of ADA liability, where no showing of discriminatory intent is required, would somehow be changed so that the intent requirement of Cal. Civ. Code section 52 would be the new standard, or that, conversely, intent would still be required under the Unruh Act even though none is required under the ADA.

Logically, and legally, *Gunther* makes no sense. It leaves the very real scenario of a disabled plaintiff proving an ADA violation, and therefore an Unruh violation, but yet not able to avail himself to the remedies of the Unruh Act unless intent is proven. This completely undermines the purpose of the legislature's amending of the Act, which obviously was to ***broaden the scope of the Unruh Act*** to include violations of the ADA against disabled persons. (And it goes without saying that this also undermines the standards of ADA liability, where correcting *benevolent inaction* is just as important as correcting intentional discriminatory actions, and why, therefore, a showing of intent is not required.) If no remedy under the Unruh Act is available unless intent is shown, then the legislature's action

1  would truly be "all bark and no bite."[1]

2          *i.*      **Plain Language**

3      Judge Karlton continued to eviscerate *Gunther* by applying the

4  analyses of liberal construction and other canons of statutory construction

5  (*see Wilson*, at 1138 – 1141), but, as usual, the simplest is almost always the

6  most powerful.

7      Under any objective view, by applying the doctrine of "plain

8  meaning," or assigning the "usual and ordinary meanings" of words to the

9  statute at issue (*see Wells v. One2One Learning Found.*, 29 Cal. 4th 1164,

10  1170 (2006)), the amended language of the Unruh Act could not possibly be

11  clearer: "A violation of any right of any individual under the [ADA] shall

12  also constitute a violation of this section." Cal. Civ. Code

13  § 51(f). Full stop, and end of story. If the ADA is violated, then the Unruh

14  Act (which as discussed above, includes section 52) is violated as well, with

15  no further inquiry into intent necessary or required.

16      Again, if this is not the case – that is, if the ADA can be violated but

17  not the Unruh Act, as laid bare by the *Gunther* analysis – then the California

18  legislature's 1992 amending of the Unruh Act is meaningless.

19

20      **3.**    ***Simply Put, the State Claims do NOT Present Novel or***
21              ***Complex Issues of Law***

22      In short, Oliver's state claims do not present novel or complex issues

---

[1] Also of importance to the legislative history is a letter to the author of the amendment bill that directly addressed the issue of intent, and which complained that the amendment provided disabled persons injured by the ADA with the remedies of the Unruh Act, with no intent required. *See Wilson*, at 1138. This letter clearly had no impact on the amendment. Thus, the author of the bill was in fact well aware that amending the Unruh Act as planned meant that a violation of the ADA was a violation of the Unruh Act with all remedies of said Act available, <u>regardless of intent</u>. Indeed, this is what the author of the bill –as well as the Senate and Assembly – <u>intended</u>.

*Oliver v. Longs Drugs*, **Case No. 07cv2302 IEG (BLM)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**

1  of law necessitating the rejection of supplemental jurisdiction pursuant to 28
2  U.S.C. § 1367.  Recently, another Eastern District court also analyzed this
3  exact issue, and came to the same conclusion as the court in *Wilson*.  In
4  *Johnson v. Barlow,* 2007 WL 1723617 (E.D.Cal), Eastern District Court
5  Judge William Shubb stated:

> This conflict [as allegedly presented by *Gunther*] **does not represent the sort of "novel and complex issue of unresolved state law" contemplated by 28 U.S.C. § 1367(c) (1)**. Section 1367(c)(1) exists so that district courts need not "resolve difficult questions of [state] law." *Medrano v. City of Los Angeles,* 973 F.2d 1499, 1506 (9th Cir.1992) (citing *Moor v. Alameda County,* 411 U.S. 693, 715-16, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)). When state law is substantially unsettled, a district court may be left without sufficient guidance as to how to resolve a dispute, which weighs against exercising supplemental jurisdiction. *Moor,* 411 U.S. at 716. **In this case, however, the conflict internal to the Unruh Act is *not* novel-it has been litigated and decided by the Ninth Circuit in *Lentini,* and this court is legally bound to follow Ninth Circuit authority**.  *Hart v. Massanari,* 266 F.3d 1155, 1175 (9th Cir.2001) ("A district court bound by circuit authority ... has no choice but to follow it, even if convinced that such authority was wrongly decided.").

*Johnson*, 2007 WL 1723617 at 2 (bold emphasis added, but not italics). *See also Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, *3) (S.D.Cal.) (Slip Copy).

In short, Longs Drugs' reliance on *Gunther* is misplaced.

**D.   Even Without a Statutory Analysis, Gunther is WRONG on the Law**

Finally, this Court need not even rely on the thorough analysis by

1  Judge Karlton in *Wilson* in order to reject *Gunther's* holding.  Plainly stated,
2  there is no requirement of intent to discriminate under either state or federal
3  law, the *Gunther* case notwithstanding.  (Of course, this is even a truer
4  statement when considered in light of the statutory analysis of the Unruh
5  Act, as discussed *supra*.)
6         First, there is a distinction between (1) ***intentional conduct*** on the one
7  hand and (2) ***discriminatory intent*** on the other hand.  They are not the same
8  and should not be confused or conflated.  There are four published decisions
9  that need to be harmonized to understand the state of the law with respect to
10 the Unruh Civil Rights Act.  Those cases are: *Harris v. Capital Growth*
11 *Investors XIV*, (1991) 52 Cal.3d 1142, 278 Cal.Rptr. 614, 805 P.2d 873;
12 *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 707 P.2d 195, 219 Cal.Rptr.
13 133; *Modern Development Co. v. Navigators, Ins. Co.* (2nd Dist. 2003) 111
14 Cal.App.4th 932, 4 Cal.Rptr.3d 528; and *Gunther v. Lin*.
15        Again, when analyzed in light of a proper statutory analysis of the
16 Unruh Act – one that takes into account the all-important intent of the
17 California Legislature – these cases do not conflict with each other, and also
18 do not conflict with *Lentini*.  The *Harris* case, in particular, is relevant
19 because it is the case upon which *Gunther* relies, and it seemingly conflicts
20 with an earlier California Supreme Court case, *Koire*.
21        First, let us begin with the highest authority on state law.  The
22 California Supreme Court has ruled that there is **no need to establish**
23 **discriminatory intent under the Unruh Civil Rights Act**.  *See Koire v.*
24 *Metro Car Wash* (1985) 40 Cal.3d 24, 707 P.2d 195, 219 Cal.Rptr. 133.  In
25 *Koire*, the plaintiff was challenging the practice of a car wash in providing
26 for cheaper car washes for women on "ladies days" and, therefore,
27 discriminating against men on those days.  The trial court found "no intent"
28 to exclude or to make men "feel unwelcome, unaccepted or undesired."

*Koire*, 40 Cal.3d at 33.   But the California Supreme Court, found a violation of the law and pointed out that: "**discriminatory *intent* is not required by the Unruh Act . . .** Plaintiff was entitled to equal treatment, no matter what his sex, and *regardless of defendants' intent in denying him equal treatment*." *Id.* (emphasis added, internal quotations removed).  There could not be a more clear statement of the law:  <u>**There is no need to establish an intent to exclude**</u>. *See also Lentini v. California Center for the Arts, Escondido,* 370 F.3d 837, 847 (9th Cir. 2004) ("We find that . . . no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation.")

Given this clear statement of the law by the California Supreme Court (and the Ninth Circuit in *Lentini*), one must then ask how we harmonize the subsequent California Supreme Court holding in *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142 (and upon which the *Gunther* court so heavily relied, and by extension Longs Drugs in the instant motion), that, "the language of the Act suggests that intentional acts of discrimination, not disparate impact, was the object of the legislation" or "the damages provision . . . reveals a desire to punish intentional and morally offensive conduct" or "we hold that a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act. A disparate impact analysis or test does not apply to Unruh Act claims." *Id.* at 1172 and 1175.

A key to harmonizing the statement, "**discriminatory intent is not required**" (*Koire*) with "**a plaintiff must prove intentional discrimination**" (*Harris*) was revealed in a published decision that has had great practical impact in these ADA/Unruh cases: *Modern Development Co. v. Navigators, Ins. Co.* (2nd Dist. 2003) 111 Cal.App.4th 932, 4 Cal.Rptr.3d 528.  In *Modern Development*, the court was faced with this very question:

what is intentional conduct under the ADA and the Unruh Civil Rights Act? (The court needed to resolve this question in order to decide whether the defendant insurance company had a duty to defend: If the conduct of plaintiff Modern Development was accidental, the company had a duty to defend; if intentional, then no duty to defend.) The *Modern Development* court found that "as a matter of law" the inaccessible restrooms were "intentional conduct" and reasoned:

> The complaint alleged that the Swap Meet failed to comply with various antidiscrimination laws relating to the disabled and that because of the resulting lack of access he was injured. These events are not covered events under The Policy because they do not constitute "accidents" or "occurrences" as such terms are defined in the Policy. As argued by Navigators, Moreno's alleged injuries were caused by the architectural configuration of the Swap Meet and Modern Development's alleged failure to remove architectural barriers, not by an accident. **The Swap Meet <u>intended</u> for the bathrooms to be configured as they were**. The result is that the incident involving Mr. Moreno is not a covered event.

Id. at 941.  Thus, under *Modern Development*, a plaintiff does not need to prove that the defendant harbored some sort of *animus* towards the disabled. Instead, the intentional discrimination required under the law (i.e. under *Harris*) is <u>the intention to present the architectural layout as it exists</u> (discriminatory or not).  In *Modern Development*, the court found that such intent was present based on the architectural configuration of the Swap Meet.  This finding jibes with both *Koire* ("discriminatory intent is not required") and *Harris* ("a plaintiff must prove intentional discrimination").

     In fact, this fits the statutory scheme perfectly.  Under the Americans with Disabilities Act, it is an act of discrimination to "fail to remove" certain

barriers. *See* 42 U.S.C. § 12182(b)(2)(A)(iv). The Unruh Civil Rights Act has incorporated that provision and, therefore, the failure to remove certain barriers is a violation of the Unruh Civil Rights Act. *See* Cal. Civ. § 51(f). In light of the *Koire/Harris/Modern* trifecta, we should say that it is a violation of the Unruh Civil Rights Act where there is an *intentional* decision to not remove barriers, or, similarly, an intention to present the architectural layout as it exists.

This harmonization does justice to each of the *Koire/Harris/Modern* decisions. Moreover, it helps make sense of a poorly worded *Gunther* decision. In *Gunther*, the plaintiff had complained about two violations: (1) lack of wrapped plumbing and (2) a non-compliant mirror. After considering the evidence, the *Gunther* court found that:

> There is also no question that defendant Lin never intended to violate the ADA. In his answer to Gunther's complaint Lin claimed that Gunther had entered the restroom "before our handyman had finished his work" of wrapping insulation around the pipe under the sink. Moreover, normally the restroom never has mirrors for anybody (because the mirror was subject to vandalism); an employee simply hung one by mistake.

Id. at *4.

Thus, because defendant Lin had *intended* that there be wrapped plumbing and had *intended* that there not be any mirror, the "violations" complained of by plaintiff Gunther were *un*intentional. In other words, the "intentionality" addressed by the *Gunther* court deals with whether the defendant intended its property to be the way that it was — not that defendant Lin had to desire to exclude persons with disabilities or treat them differently. In *Gunther*, the defendant did NOT intend that there be a mirror and did NOT intend that its plumbing be exposed and, therefore, the

*Oliver v. Longs Drugs*, Case No. 07cv2302 IEG (BLM)
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**

Page 15

*Gunther* court found no violation.

In the present case, therefore, the parties must examine whether Longs Drugs intended to maintain the subject properties without, *e.g.*, accessible parking, accessible paths of travel, and accessible restrooms (among other violations) since effective business start-up dates, or since enactment of the ADA. The question is ***not*** whether Longs Drugs intended to specifically discriminate against disabled persons such as Oliver; that is, the question is not whether defendant possessed discriminatory animus. Rather, the question is whether Longs Drugs <u>intended</u> to design the subject property in its current state, which design happens to deny full and equal access to disabled persons such as Oliver.

Oliver urges this Court to reject the narrow and self-serving interpretation urged by Longs Drugs and interpret the law consistent with the published decisions, as well as based on sound canons of statute construction, as explicated by *Wilson*. Regarding the Unruh Civil Rights Act, the California "Legislature's desire to banish [discrimination] from California's community life has led [the California Supreme Court] to interpret the Act's coverage '**in the broadest sense reasonably possible**.'" *Isbister v. Boys' Club of Santa Cruz,* (1985) 40 Cal.3d 72, 75-76, 219 (emphasis added), *quoting Burks v. Poppy Construction Co.,* (1962) 57 Cal.2d 463, 468, 20.

After all, it is in the spirit of interpreting the Act's coverage "in the broadest sense reasonably possible," that the Honorable Judge Karlton stated: "Furthermore, the court finds that the issue of state law presented by the instant action is not particularly novel or complex in light of the overwhelming body of case law finding that proof of intent is not required [under the Unruh Act when an ADA violation is show]." *Wilson*, at 1138 n.15. *Gunther* is an aberration, not the law.

### III. CONCLUSION

For the foregoing, Oliver respectfully requests that this Court continue to exercise supplemental jurisdiction over his state claims.

First, if this Court is inclined to follow *Gunther* and require a proof of intent, Oliver has pled the necessary intent, and has a right to prove up such intent through litigation. This Court need not make a "Hobson's Choice" regarding supplemental jurisdiction over Oliver's state law claims at this juncture.

Secondly, *Gunther* is not the law; it is rather an incorrect interpretation of both existing state and federal law, as well as a misinterpretation of both the Unruh Act and the Legislature's intent when that august body acted to amend the Unruh Act. It is an aberration in the face of an overwhelming body of cases that is contrary to its holding.

Finally, even if this Court rules to decline supplemental jurisdiction over the Unruh Act claim, it still must retain jurisdiction over the remaining state law claims, as defendant has presented no argument or evidence that these *other* state law claims present "exceptional circumstances" or "compelling reasons" to decline jurisdiction.

DATED: February 1, 2008    LAW OFFICES OF LYNN HUBBARD

 */s/ Lynn Hubbard, III, Esquire*
 LYNN HUBBARD, III
 Attorney for Plaintiff, A.J. Oliver